**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT L. DEWELT, | |
| Plaintiff, | |
| v. | Civil Action No. 02-cv-3431 (PGS) |
| MEASUREMENT SPECIALTIES, INC., JOSEPH R. MALLON, JR., DAMON GERMANTON, STEVEN P. PETRUCELLI, DAN J. SAMUEL, JOHN D. ARNOLD, and MORTON L. TOPFER, | **OPINION** |
| Defendants. | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Plaintiff Robert L. Dewelt's appeal of the order of the Magistrate Judge, denying the plaintiff's motion to compel. For the reasons that follow, the Court finds no abuse of discretion and adopts the oral findings and rulings of the Magistrate. However, the Court modifies the order to more accurately reflect the decision placed on the record.

I.

Plaintiff, Robert L. DeWelt, was hired by Defendant Measurement Specialties, Inc. ("MSI"), in August 2001 as Vice President of Finance. Among his responsibilities included the development of a program for inventory control and cost accounting. In the latter part of August 2001, plaintiff discovered that financial statements filed with the SEC contained grossly inflated inventory valuation.

In February 2002, a Special Committee of MSI's Board of Directors convened in connection with a wholly unrelated matter concerning actions by the company's Chief Financial Officer, Kirk Dischino, in creating and executing fraudulent bank waivers to waive the company's default of financial covenants under its loan agreements. Unaware of the actual purpose of the Special Committee, plaintiff alleges that he and another employee informed the committee of the inventory valuation fraud. The committee ultimately terminated Dischino and appointed plaintiff as Acting CFO.

Plaintiff contends that MSI was of the opinion that its SEC filings were in compliance with GAAP and contained no material error in accounting methodology or practice. However, when it came time to issue the 10Q financial statement and press release for the final quarter of 2001, plaintiff claims to have refused to sign or prepare any document containing false information. It is further alleged that defendants suggested that plaintiff consider giving up his financial duties, by which he would not be required to sign any documents, and remain employed by MSI. Plaintiff understood this offer to mean that he would be paid for a "'no show' position," considering that stripping plaintiff of his financial responsibilities would prevent plaintiff from performing his job functions.

Defendants maintain that there was no disagreement in the overvaluation of the inventory. There was, however, uncertainty and disagreement as to whether the adjustment should be reported in the third quarter of 2002 or whether the company should restate prior financial statements. Defendants claim that plaintiff argued in favor of restatement and when defendants chose otherwise, plaintiff resigned. Contrary to the plaintiff's claim of the "no show position" proposal, defendants claim to have offered the plaintiff several alternatives to resignation, including moving to another role in the company so he would not have to sign the 10Q, issuing plaintiff a letter stating that it was

the Board's decision not to issue a restatement, or assisting the company as a consultant. Plaintiff allegedly rejected each proposal.

MSI filed its 10Q in May 2002, noting the increased net loss of $10.1 million for the quarter ending December 31, 2001. While MSI determined that earnings for prior periods did not need to be restated, the company initiated discussions with the Office of the Chief Accountant of the SEC on the issue. Thereafter, as a result of an audit by Grant Thornton, MSI issued a restatement of certain prior periods with its 2002 Annual Report.

The SEC's investigation, which started in connection with Dischino's bank waiver fraud, resulted in a settlement between the SEC and MSI, as well as settlement between the SEC and Dischino. The SEC accused Dischino of having engaged in two separate accounting frauds, the default concealment and the inventory overstatement. The SEC did not charge any other individual at MSI with fraudulent activity.

On July 17, 2002, plaintiff filed the instant Complaint seeking recovery under the New Jersey Conscientious Employee Protection Act (CEPA). Throughout the course of discovery, plaintiff has conducted 14 fact witness depositions, served separate interrogatories on each of the seven defendants, issued five subpoenas to various finance and accounting firms, and served four requests for production of documents. The plaintiff has compiled in excess of 26,000 pages of documents in connection with its subpoenas and document demands. The plaintiff has further sought, by way of a motion to compel: (1) documents exchanged with the Audit Committee or Special Committee referring or relating to the restatement issue; (2) minutes of MSI's Board meetings during the period that the production credit was in use and up to the date of restatement; (3) documents relating to the Special Committee's interview of plaintiff, Dischino, and MSI's former controller, Edward McClausand; (4) documents relating to the SEC's investigation of MSI's inventory accounting

practices; and (5) MSI's bank documents concerning the field audit conducted by First Union in January of 2002.

Without oral argument, the Magistrate Judge, denied the motion to compel by Order dated February 14, 2005. Plaintiff promptly moved to appeal the Magistrate's Order to the District Judge, who found that the Magistrate Judge failed to "set forth the basis upon which the Court ruled and hence the Court is unable to evaluate whether or not an abuse of discretion occurred." The matter was remanded to a different Magistrate Judge, who heard oral argument on January 9, 2006. On January 24, 2006, the Court ordered MSI to produce from the documents that MSI provided to the SEC, as part of the SEC's investigation of MSI commencing in 2002, any pages of documents that refer to the plaintiff by name or refer to the lawsuit filed by plaintiff against MSI. The motion was denied in all other respects.

Plaintiff appealed the Magistrate Judge's decision on February 9, 2006.

II.

The Federal Magistrates Act provides two separate standards of judicial review: "de novo" for magistrate resolution of dispositive matters, see 28 U.S.C. § 636(b)(1)(B)-(C), and "clearly erroneous or contrary to law" for magistrate resolution of nondispositive matters. See 28 U.S.C. § 636(b)(l)(A); FED. R. CIV. P. 72(a); Rule 72.1(a) of the Local Rules of the United States District Court for the District of New Jersey; *Cipollone v. Liggett Group. Inc.*, 785 F.2d 1108 (3rd Cir. 1986).

The plaintiff calls upon the Court to review a decision denying a motion to compel the production of documents, a nondispositive matter. Therefore, to reverse the decision of the Magistrate, the Court must find that the rulings were clearly erroneous or contrary to law. A finding is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. "[A]

finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on [consideration of] the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lo Bosco v. Kure Engineering Ltd.*, 891 F. Supp. 1035, 1037 (D.N.J.1995) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The Third Circuit has interpreted this to mean that the reviewing court must accept the factual determination of the fact finder unless that determination "either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Haines v. Liggett Group Inc.*, 975 F.2d 81, 92 (3d Cir. 1992)(quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir.1972)).

In non-dispositive matters, where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied. *Port Auth.v. Affiliated FM Ins. Co.*, 2001 U.S. Dist. LEXIS 7579, *5 (D.N.J. Mar. 29, 2001). "[M]any matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure: Civil 2d § 3069* (2d ed.1997). A Magistrate Judge's decision in a discovery dispute "is subject to great deference and will only be reversed if found to be an abuse of discretion." *Envtl. Tectonics v. W.S. Kilpatrick & Co.*, 659 F.Supp. 1381, 1399 (D.N.J.1987) (citations omitted), mod., 847 F.2d 1052 (3d Cir.1988), aff'd, 493 U.S. 400 (1990).

The district court will not reverse the Magistrate Judge's determination, even in circumstances where the court might have decided the matter differently. *Bowen v. Parking Auth. of City of Camden*, 2002 WL 1754493, *3 (D.N.J. Jul. 30, 2002). The burden placed on the moving party is clear. Unless that burden is met, the Magistrate Judge's findings should not be rejected even

if the district court could have reached a different conclusion. *Andrews v. Goodyear Tire & Rubber, Co., Inc.*, 191 F.R.D. 59, 68 (D.N.J.2000) (a district judge's "simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review"); *Toth v. Alice Pearl, Inc.*, 158 F.R.D. 47, 50 (D.N.J.1994).

III.

The plaintiff has asserted that the Magistrate's ruling was both contrary to law and clearly erroneous. It is maintained that the documents requested are relevant and necessary to prove the elements of a CEPA claim. A successful plaintiff under CEPA must show four elements: (1) he reasonably believed that an activity, policy or practice of defendant, his employer, was in violation of a law, rule or regulation promulgated pursuant to law or was fraudulent or criminal; (2) he objected to or complained about the activity, policy or practice; (3) retaliatory action was taken against him (i.e. adverse employment action occurred); and (4) there was a causal link between the plaintiff's action and the retaliatory or adverse action of the defendant employer. *Reynolds v. TCM Sweeping, Inc.*, 340 F.Supp.2d 541, 545 (D.N.J. 2004). Plaintiff insists that the sought documents are necessary to establish that MSI was engaged in unlawful activity, the causation prong, and grounds for punitive damages.

Analyzing first plaintiff's claim that the Court's ruling was contrary to law, plaintiff points to the language of Fed. R. Civ. P. 26 which provides, in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

As stated above, a ruling is contrary to law if the Magistrate Judge has misinterpreted or misapplied

applicable law. *Bobian v. CSA Czech Airlines*, 222 F.Supp.2d 598, 601 (D.N.J.2002). In this case, the Magistrate simply found that the plaintiff's requests were "extremely broad" and not relevant to plaintiff's CEPA or retaliation claim. The Court stated, "there are approximately 20 or a little more than 20 plus categories of documents. And what I gleaned from a lot of that was that although this is a retaliation claim, it does not, therefore equal an entitlement to any and all documents...it seemed to be sort of a blanket request for just any and all documents because it is a retaliation or CEPA claim." The court permitted the production of certain information, noting that such information, while seemingly relevant, may not be admissible at the time of trial. The Magistrate stated, "[i]f there is something in the SEC file that pertains specifically to the plaintiff Mr. Dewelt, then that should be turned over...The same would apply regarding the balance of the documents that are being requested..."

It is clear that the Magistrate did not misinterpret or misapply the applicable law. Rather, plaintiff is claiming that the Magistrate's determination that the requests at issue were not included within the realm of relevant information as defined by Fed. R. Civ. P 26, was "clearly erroneous." To find the Magistrate's ruling clearly erroneous, this Court, after a review of the record, must be left with the definite and firm conviction that a mistake has been committed. *Lo Bosco*, 891 F. Supp. at 1037.

After a complete review of the papers, and the inescapable fact that this motion to compel has been denied by two Magistrates, it is difficult to find the Magistrate's conclusion clearly erroneous. However, the order entered by the Court does not reflect the findings and rulings set forth on the record. Documents that "pertain[] specifically to the plaintiff" and "documents that refer by name to DeWelt," as stated in the order, do not correlate.

The Court adopts the findings and rulings set forth on the record, requiring defendants to produce those documents as they "pertain[] specifically to the plaintiff." Sensitive to the fact that the word "pertain" may be somewhat vague and ambiguous, the Court sought the assistance of the parties in crafting the scope of the production. The movant recommended to merely replace the phrase "pertains specifically to" with "relevant to," and defendants submitted a form of order that is more limited than the Order at issue. The court rejects both proposals. The Court has resolved to order defendants to produce the documents specified in the Magistrate's Order and, further, if after a review of the documents produced, plaintiff can identify other pertinent documents with a reasonable degree of specificity, the plaintiff may apply to the Court for its production.

For the foregoing reasons, the oral findings and rulings of the Magistrate are affirmed with modifications to the Order so as to accurately reflect the Court's ruling.

October 19, 2006

PETER G. SHERIDAN, U.S.D.J.